UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLEN ELISABETH SMITH, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF LABOR, et al., <br><br> Defendants. | Civil Action No.  10-1253 (JEB) |

## MEMORANDUM OPINION

Plaintiff Ellen Smith filed a Freedom of Information Act request seeking Department of Labor documents related to a mining disaster.  Deeming DOL's response insufficient, she brought this FOIA suit challenging the Agency's redaction of certain information.  As this litigation has progressed, Defendants have made three supplemental releases, effectively narrowing the dispute to just 77 redacted lines on eight pages.  Having now reviewed *in camera* all of the redactions, the Court finds no improper withholding and will thus grant Defendants' Motion for Summary Judgment and deny Plaintiff's Cross-Motion.

**I.      Background**

Plaintiff is the publisher of a newsletter, *Mine Safety and Health News*, that covers the mining industry.  Pl. Motion, Declaration of Ellen Smith, ¶ 1.  In January 2009, she submitted a FOIA request to the Department of Labor to obtain a "copy of the Martin County Coal Corporation Accident investigation, given to the Assistant Secretary of Labor for Mine Safety and Health on or about Dec. 9, 2002 by the Office of the Inspector General."  Id., ¶ 10.  This report was compiled in response to a mining accident that occurred in Martin County, Kentucky, in October 2000.  Id., ¶¶ 3-4.

1

DOL forwarded the request to OIG, which delegated it to FOIA officer Kimberly Pacheco. Def. Motion, Declaration of Kimberly Pacheco, ¶ 5. Pacheco reviewed agency files and determined that the Agency had already responded to several identical FOIA requests: one from Smith in 2003 and two from third parties in 2004. Id., ¶ 6. In response to these previous requests, DOL had released a two-page cover letter from the Inspector General to the Secretary of Labor, a two-page executive summary, and the 25-page investigative report that OIG had prepared in the course of responding to the accident. Id. Pacheco accordingly responded to Smith's 2009 request by releasing the previously disclosed 29 pages, with some redactions on each page. Id., ¶¶ 7-8.

Plaintiff appealed these redactions to the Solicitor's Office in February 2009. Id., ¶ 9. Because of backlogged appeals, Plaintiff's case was reviewed in November 2009. Def. Motion, Declaration of William W. Thompson II, ¶¶ 6-7. Associate Solicitor for Management and Administrative Legal Services William W. Thompson II affirmed certain redactions, but released 24 of the 29 pages in fuller form. Id., ¶ 7.

Pacheco then received a subsequent FOIA request from Plaintiff on December 13, 2009. Pacheco Decl., ¶ 10. Plaintiff requested the table of contents of, and all exhibits appended to, the accident investigation report. Id. These documents, consisting of 205 pages, were located by an OIG special agent who worked on the investigation. Id. Pacheco reviewed the documents and determined that 106 pages required further review by the Mine Safety and Health Administration (MSHA) because MSHA had generated the information they contained. Id., ¶ 11. On April 15, 2010, OIG released the remaining 99 pages with some redactions and explained that the additional 106 pages were being reviewed by MSHA. Id., ¶ 12.

Plaintiff appealed this response to the Solicitor's Office in May 2010. Thompson Decl., ¶ 8. An additional release was made as a result: 18 redacted pages were released in fuller form. Id., ¶ 9. The Solicitor's Office, however, affirmed the redaction of names of OIG special agents, references to an individual's career plans external to DOL, personal phone numbers, and identifying information of people who were subject to internal personnel discussions. Id., ¶ 13.

MSHA subsequently concluded its review of the documents sent to it. Def. Motion, Declaration of Lanesia Washington, ¶ 6. Portions of exhibits included in MSHA's Draft Internal Review Report to OIG were compared to exhibits included in the Final Report. Id. Some information included in the Draft Report, but not the Final Report, was redacted. Id. MSHA, though, disclosed all 106 pages, at least in some form. Washington Decl., Exh. C.

Plaintiff next filed suit in this Court on July 23, 2010, challenging Defendants' redactions. During the course of the litigation, Defendants released more unredacted pages on three separate occasions. Prior to briefing, Plaintiff had received all 234 pages of the report and its exhibits, with redactions made to information on just 51 individual pages. During the course of briefing Cross-Motions for Summary Judgment, the dispute was narrowed even further. At present, only seven documents covering eight pages and containing 77 redacted lines remain in dispute. See Pl. Motion at 2. On July 7, 2011, this Court ordered Defendants to produce the eight disputed pages for *in camera* review. Defendants produced those documents six days later, and the Court has since reviewed each redaction along with the Agency's respective justification.[1]

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute

---

[1] The Court has also reviewed Defendants' Motion, Plaintiff's Cross-Motion and Opposition, Defendants' Reply and Opposition, and Plaintiff's Reply.

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. Liberty Lobby, Inc., 477 U.S. at 248. Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. United States Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). A defendant agency seeking summary judgment in a FOIA case must demonstrate that no material facts are in dispute, that it has conducted an adequate search for responsive records, and that each responsive record that it has located has been produced to the plaintiff or is exempt from disclosure. Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001). In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations if they are relatively detailed and "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit

Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. Cent. Intelligence Agency, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III.    Analysis**

Plaintiff argues that the Agency erred in three respects. First, she claims that DOL failed to include a segregability analysis in its Vaughn index and that the Vaughn index itself is inadequate. See Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973) (requiring agency to produce an index when agency withholds information in its response to valid FOIA request). Second, she maintains that Defendants' redaction of six lines pursuant to Exemption 5 was improper. Third, Plaintiff contends that Defendants' redaction of personal and job-performance information under Exemptions 6 and 7(C) was also improper. See 5 U.S.C. § 552(b) (listing exemptions). Having reviewed the disputed redactions *in camera*, the Court finds that Plaintiff's arguments are without merit. While the Court does not always follow Defendants' logic here in deciding at times to withhold some information while releasing similar information, the Court nevertheless finds that the exemptions were not improper.

    A.  DOL's Vaughn Index and Segregability

Plaintiff first argues that DOL's submissions fail to specifically identify the reasons why a particular exemption is relevant; in addition, they do not correlate such reasons with the particular part of the withheld document so as to permit Plaintiff and the Court to effectively evaluate the claimed exemptions. This contention, however, is belied by an examination of DOL's submissions.

A proper Vaughn index provides a specific factual description of each document sought, including a general description of the document's contents, and information about the date, time, and place of the document's creation. See Missouri Coal. for Env't Found. v. U.S. Army Corps of Engineers, 542 F.3d 1204, 1209-10 (8th Cir. 2008). While DOL's Vaughn index does not contain such a factual description of each redacted document, requiring it to do so would exalt form over substance. This is because Plaintiff has all of the documents; none has been withheld in its entirety. DOL thus need not provide redundant descriptions of documents from which only small portions are redacted. See Judicial Watch, Inc. v. FDA, 449 F.3d 141, 146 (D.C. Cir. 2006) ("[W]e focus on the functions of the Vaughn index, not the length of the document descriptions.").

In addition, the Agency's Vaughn index describes the rationale for the exemptions invoked and provides the locations in the disclosed documents where redactions are made under those exemptions. In fact, at the actual sites of redaction, the number of the relevant exemption is provided. Indices such as this one have generally been accepted by courts as long as "[e]ach deletion [is] correlated specifically and unambiguously to the corresponding exemption . . . [which] [is] adequately explained by functional categories . . . [so as to] place[] each document into its historical and investigative perspective." Keys v. DOJ, 830 F.2d 337, 349-50 (D.C. Cir. 1987).

Plaintiff nevertheless points to several cases in arguing that DOL's Vaughn index is inadequate because it fails to contain the requisite segregability analysis. See, e.g., Isley v. EOUSA, 1999 WL 1021934, at *7 (D.C. Cir. 1999); Nat'l Resource Def. Council v. Dep't of Justice, 388 F. Supp. 2d 1086 (C.D. Cal. 2005); Krikorian v. Dep't of State, 984 F.2d 461, 467 (D.C. Cir. 1993) (remanding for segregability determination for "each of the withheld

documents"). But these cases are inapposite in the circumstances present here. This is not a case where multiple documents have been withheld in full. Instead, we have a single, 234-page document that was released with disputed redactions on only eight pages, comprising only 77 lines of text. The Agency's redactions are themselves indicative that DOL conducted a line-by-line review and segregation of the material. The Vaughn index, therefore, is not inadequate, and DOL need provide nothing more specific.

    B. <u>Exemption 5</u>

Even if the Vaughn index is sufficient, Plaintiff argues that Defendants' claimed exemptions are improper. She first targets DOL's redactions under Exemption 5. This exemption covers a grand total of six lines of redactions. Exemption 5 generally protects documents that would be unavailable to an opposing party through discovery in civil litigation. <u>See</u> <u>U.S. v. Weber Aircraft Corp.</u>, 465 U.S. 792, 800 (1984); <u>Martin v. Office of Special Counsel</u>, 819 F.2d 1181, 1185 (D.C. Cir. 1987) (Exemption 5 "unequivocally" incorporates "all civil discovery rules"). Disclosure of records is only compelled where such records would "routinely be disclosed" in litigation. <u>Weber</u>, 465 U.S. at 27. Accordingly, courts do not consider the requester's need for the documents. <u>Martin</u>, 819 F.2d at 1184 ("[T]he needs of a particular plaintiff are not relevant to the exemption's applicability.").

DOL justifies its invocation of Exemption 5 under the "Deliberative Process Privilege." <u>See</u> Pacheco Decl., ¶ 17. "One of the traditional evidentiary privileges available to the Government in the civil discovery context is the common-sense, common-law deliberative process privilege." <u>Jordan v. DOJ</u>, 591 F.2d 753, 772 (D.C. Cir. 1978). This encompasses three main policy purposes, two of which are applicable to this dispute: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; and (2) to protect against

7

public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. See Russell v. Dep't of Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); see also Missouri ex rel. Shorr v. U.S. Army Corps of Eng'rs, 147 F.3d 708, 710 (8th Cir. 1998) ("The purpose of the deliberative process privilege is to allow agencies to freely explore alternative avenues of action and to engage in internal debates without fear of public scrutiny.").

Two requirements must be met to permit valid invocation of this privilege. The communication to be withheld must be predecisional -- *i.e.*, "antecedent to the adoption of an agency policy," Jordan, 591 F.2d at 774, and it must be deliberative -- *i.e.*, "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn, 523 F.2d at 1143-44. A record or document can be predecisional in nature even when an agency subsequently makes a final decision on the issue discussed in the record or document. See Fed. Open Mkt. Comm. V. Merrill, 443 U.S. 340, 360 (1979).

Associate Solicitor Thompson affirmed OIG's application of Exemption 5 "to withhold internal agency discussion about a possible action to take, *i.e.*, a proposed MSHA citation, which was different from the violations MSHA ultimately issued." Pacheco Decl., ¶ 15. OIG redacted "MSHA employee's [*sic*] thoughts, actions, opinions and ideas as the employees weighed and debated the application of a particular citation that MSHA ultimately decided not to issue." Id., ¶ 17. As a result, DOL's redactions clearly satisfy both of the requirements of the privilege. First, since the redacted portion of the report contains information about a citation that was considered but not issued, the subject matter is necessarily antecedent to the decision not to issue that citation. Plaintiff's contentions to the contrary -- stating that the "OIG Report was published on December 9, 2002, well after the citations were issued," Pl. Motion at 13 -- hold no

water because the question is whether the deliberation, not the publication of the report, preceded the citation. It obviously did.

Similarly, the information is deliberative. Deliberative material "reflects the give and take of the consultative process . . . [and] thus [includes] recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). An *in camera* review discloses that the redacted six lines discuss deliberations over a proposed citation that was not issued. As the Court is satisfied that the six lines at issue here contain information that is both predecisional and deliberative, Defendants' redaction pursuant to Exemption 5 was proper.

C. Exemptions 6 and 7(C)

Plaintiff next argues that Defendants improperly redacted material under Exemptions 6 and 7(C). The privacy interest in Exemption 6 is narrower than in Exemption 7(C), so if the redactions satisfy the former, no examination of the latter is necessary. Exemption 6 protects redactions under the following criteria: first, the information must be contained within "personnel and medical files and similar files"; second, the disclosure of the information "would constitute a clearly unwarranted invasion of personal privacy"; and third, if the first two requirements are met, the privacy interest must be weighed against the public interest in disclosure. See 5 U.S.C. § 552(b)(6); see also Armstrong v. Executive Office of the President, 97 F.3d 575, 582 (D.C. Cir. 1996).

The *in camera* review demonstrates that the information that DOL seeks to withhold -- including names of low-level MSHA employees, identifying information about individuals who were the subject of internal personal discussions, personal opinions of job performance, personal

phone numbers, a home address, and a personal e-mail address -- meets the "similar files" requirement.[2] In United States Department of State v. Washington Post Co., 456 U.S. 595 (1982), the Supreme Court held, based upon a review of the legislative history of FOIA, that Congress intended the term "similar files" to be interpreted broadly, rather than narrowly. Id. at 599-603. The Court stated that the protection of an individual's privacy "surely was not intended to turn upon the label of the file which contains the damaging information." Id. at 601 (citing H.R. Rep. No. 89-1497 at 11 (1966)); see Judicial Watch, Inc. v. FDA, 449 F.3d 141, 152 (D.C. Cir. 2006) ("The Supreme Court has read Exemption 6 broadly, concluding the propriety of an agency's decision to withhold information does not 'turn upon the label of the file which contains the damaging information.'") (quoting Wash. Post, 456 U.S. at 601). Rather, the Court made clear that all information that "applies to a particular individual" meets the threshold requirement for Exemption 6 protection. 456 U.S. at 602. "[I]nformation about an individual should not lose the protection of Exemption 6 merely because it is stored by an agency in records other than 'personnel' or 'medical' files." Id. at 601.

All of the redactions here are either personal or job-performance information. DOL's Vaughn index, moreover, explains that the redactions were made under Exemptions 6 and 7(C) because they "[i]dentif[ied] information about MSHA employees who were the subject of internal personnel discussions, which consisted of personal opinions and comments about job performance." Performance appraisals are precisely the sort of information found in protected personnel files. The withheld information, therefore, logically meets the "similar files" threshold requirement for Exemption 6. See, e.g., FLRA v. U.S. Dep't of Commerce, 962 F.2d 1055, 1059-61 (D.C. Cir. 1992) (affirming withholding of employee performance appraisals).

---

[2] Exhibit 48 contains information redacted in the privacy interest of Dr. Celeste Monforton, former Special Assistant for the Assistant Secretary for MSHA. Because Monforton has waived her privacy interest in this information, see Monforton Decl., this information was disclosed.

Disclosure of the withheld information must also "constitute a clearly unwarranted invasion of personal privacy" in order to be exempt. The disclosure must compromise a substantial, as opposed to a *de minimis*, privacy interest. See, e.g., Multi Ag Media LLC v. USDA, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008). In this Circuit "[t]he threat to privacy . . . need not be patent or obvious to be relevant." Pub. Citizen Health Research Group v. U.S. Dep't of Labor, 591 F.2d 808, 809 (D.C. Cir. 1978). The threat to privacy, though, must be real rather than speculative. See Dep't of the Air Force v. Rose, 425 U.S. 352, 380 n.19 (1976) ("The legislative history is clear that Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities."); Carter v. U.S. Dep't of Commerce, 830 F.2d 388, 391 (D.C. Cir. 1987) (stating that "[w]ithholding information to prevent speculative harm" is contrary to FOIA's pro-disclosure policy). Information need not be intimate or embarrassing to qualify for Exemption 6 protection. See Horowitz v. Peace Corps, 428 F.3d 271, 279 (D.C. Cir. 2005). Generally, personal identifying information such as a person's name, address, phone number, date of birth, criminal history, medical history, and social security number may be protected under Exemption 6. See Wash. Post Co., 456 U.S. at 600 ("Information such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet . . . such information . . . would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy.").

Here, DOL claims that "[r]evealing this information could risk that the individuals would be the subject of unwarranted, unwelcome, and unexpected contacts by individuals and subject these individuals to embarrassment and jealousy from co-workers." Vaughn Index, ¶ 5. "[A]n employee has at least a minimal privacy interest in his or her employment history and job performance evaluations . . . [and] [t]hat privacy interest arises in part from the presumed

11

embarrassment or stigma wrought by negative disclosures." People for Ethical Treatment of Animals v. USDA, 2007 WL 1720136, at *4 (D.D.C. 2007). Federal civilian employees also have a protectible privacy interest in purely personal details that do not shed light on agency functions. See Kidd v. DOJ, 362 F. Supp. 2d 291, 296-97 (D.D.C. 2005) (finding privacy interest in home telephone number); Barvick v. Cisneros, 941 F. Supp. 1015, 1020-21 (D. Kan. 1996) (finding privacy interest in personal information such as home addresses and telephone numbers, social security numbers, and performance appraisals). Courts generally recognize the sensitivity of information contained in personnel-related files and have accorded protection to the personal details of a federal employee's service. See, e.g., McLeod v. U.S. Coast Guard, 1997 WL 150096 (D.C. Cir. 1997) (finding privacy interest in Coast Guard officer's evaluation report); Putnam v. DOJ, 873 F. Supp. 705, 712-13 (D.D.C. 1995) (finding privacy interest in names of FBI employees mentioned in "circumstances outside of their official duties," such as attending classes and applying for jobs).

The Court agrees that failure to redact the information here would constitute an unwarranted invasion of employees' personal privacy. The information redacted directly relates to performance appraisals and contains some negative evaluations. This is identical to what the preceding cases here kept private.

Having found that Defendants have satisfied the first two Exemption 6 requirements, the Court must now weigh the public interest in disclosure against the individuals' privacy interests. The only valid public interest in the FOIA context is one that serves FOIA's core purpose of shedding light on an agency's performance of its statutory duties. See DOJ v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773 (1989). The requester has the burden of demonstrating that public interest. See Carter v. U.S. Dep't of Commerce, 830 F.2d 388, 391 nn.

8 & 13 (D.C. Cir. 1987). If a requester can demonstrate that disclosure would serve to "check against corruption and to hold the governors accountable to the governed," <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 242 (1978), she can generally satisfy this requirement. But the balancing test does not even come "into play" when the requester has produced no evidence to "warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." <u>NARA v. Favish</u>, 541 U.S. 157, 175 (2004) (considering the balancing test as applied to Exemption 7(C)).

Plaintiff argues that the public interest is great because it involves the propriety of a government investigation into a mining disaster. Yet she fails to satisfy her burden for two central reasons. First, Plaintiff's "evidence" consists only of unsubstantiated allegations of a government cover-up. Her supporting "statements" in the OIG report are, in actuality, only "allegations" and "suggestions" by others that were determined to be unfounded. Second, the Court's *in camera* review has demonstrated that the redacted material is entirely unrelated to the allegations Plaintiff makes. The public interest, therefore, does not outweigh the individuals' privacy interests.

As the Agency's redactions pursuant to Exemption 6 were valid, the Court need not consider Exemption 7(C).

**IV.   Conclusion**

Because Defendants properly segregated redactions from releases made pursuant to Plaintiff's FOIA request, and those redactions were proper under Exemptions 5 and 6, the Court will grant Defendants' Motion and deny Plaintiff's Motion. An Order consistent with this Opinion will issue today.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 26, 2011